### STATE OF CONNECTICUT *v.* ALEXANDER ARISCO (13354)

O'Connell, Landau and Heiman, Js.

Argued June 1—decision released August 29, 1995

*Robert J. McKay,* with whom, on the brief, was *Michael J. Melly,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attor-

ney, and *Brian Preleski*, deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a).[1] On appeal, the defendant claims that the trial court improperly (1) denied his motion to dismiss the charge against him because he was stopped by the police in violation of article first, §§ 7 and 9, of the constitution of Connecticut, and (2) denied his application for participation in a pretrial alcohol education program. We are unpersuaded by the defendant's claims and affirm the judgment of the trial court.

The following facts are necessary for the resolution of this appeal. At approximately 2 a.m. on October 22, 1992, the defendant and a friend were walking on Vance Drive in Bristol. Officer John McNellis of the Bristol police department was patrolling the area, which was known for frequent sales of narcotics. When McNellis saw the defendant, he asked the defendant his name and why he was in the area. The parties presented conflicting evidence to the trial court as to whether McNellis called the defendant over to answer his questions or if he merely approached the defendant as the defendant was walking down the street.

---

[1] General Statutes § 14-227a (a) provides: "Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

The defendant told McNellis his name and informed McNellis that he was in the area with a friend and that his truck was located in the Stop and Shop parking lot nearby. McNellis noticed that the defendant had a strong odor of alcohol on his breath, that his speech was slurred and that he was having difficulty walking. McNellis asked the defendant if he planned to drive and the defendant replied that he did not. McNellis then wished the defendant a "nice night" and returned to his patrol car.

A few minutes after this encounter, McNellis was continuing his patrol of the area when he saw the defendant driving a truck on Farmington Avenue. McNellis immediately turned on the overhead lights on his cruiser and pulled over the defendant. McNellis observed that the defendant still smelled of alcohol, that he had difficulty standing and walking and that his speech was slurred. Three field sobriety tests were administered to the defendant, who failed each of them. On the basis of the defendant's failure of those tests, McNellis believed he had probable cause to arrest the defendant for driving while intoxicated. Once at the police station, the defendant was again administered field sobriety tests, which he failed to perform adequately.

## I

The defendant first asserts that the trial court improperly denied his motion to dismiss because he was stopped both on foot and in his vehicle in violation of article first, §§ 7 and 9,[2] of the constitution of Connecticut. We decline to review this claim.

---

[2] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

The following additional facts are necessary to an understanding of our resolution of this claim. Prior to the commencement of trial, the defendant filed a motion to dismiss the charge against him. Upon presentation to the court, the defendant stipulated that the motion could be decided at the close of the evidence so that the witnesses would not have to testify twice. After all of the evidence was heard, the defendant argued that the case against him should be dismissed. In support of this claim, the defendant argued that he was stopped on the street in violation of his right to be free of unreasonable searches and seizures under the Connecticut constitution, citing specifically to *State* v. *Oquendo*, 223 Conn. 635, 613 A.2d 1300 (1992). The defendant alleged that the actions of McNellis constituted a show of force and that the defendant did not feel he was free to leave. In addition, he claimed that all evidence flowing from that initial illegal stop was inadmissible as "fruit of the poisonous tree" and that, therefore, the second stop, while the defendant was in his vehicle, was also in violation of the Connecticut constitution.

In response, the state argued that in this case, there was no stop within the meaning of *Oquendo*. The state asserted that the evidence established that the defendant was never told to halt and that McNellis never gave any sort of directive to the defendant that would have made him feel he was not free to leave. In addition, the state asserted that the atmosphere surrounding the stop was not one that was police dominated because the stop took place on the street and a single officer faced two people. The state also pointed out that the defendant was not handcuffed or put in the police cruiser at the time of this initial stop. In conclusion, the state posited that even if the actions of the police officer did constitute a stop, there existed a reasonable articulable suspicion to support it.

The trial court denied the defendant's motion to dismiss in open court. It concluded that there was no custodial search of the defendant and that there was no interference with the defendant's right to leave or to conclude the questioning. The trial court did not, however, articulate any of the predicate facts on which it based its legal conclusions. The defendant did not file a motion for articulation requesting the trial court to enunciate the predicate facts found.

It is the appellant's burden to furnish this court with an adequate record for us to review his claims. Practice Book § 4061; *State* v. *Youdin*, 38 Conn. App. 85, 95, 659 A.2d 728 (1995). Here, the transcript of the trial court's ruling on the motion to dismiss contains legal conclusions, but is devoid of predicate facts as required by Practice Book § 4059.[3] Therefore, we have no way of knowing from the trial court's ruling whether it credited the officer's testimony that he merely approached the defendant on the street and made simple inquiries or whether it credited the defendant's testimony that the officer called him over in a show of force that prohibited him from being free to leave or to stop answering questions. "Without any specific findings of fact . . . we cannot determine the basis of the court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Fontanez*, 37 Conn. App. 205, 207, 655 A.2d 797 (1995), quoting *State* v. *Rosedom*, 34 Conn. App. 141, 144, 640 A.2d 634 (1994). This court "will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal

---

[3] Practice Book § 4059 (a) (3) provides in pertinent part: "[I]n decisions upon motions to dismiss under Sec. 814 . . . the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties *and the factual basis therefor*. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ." (Emphasis added.)

quotation marks omitted.) *State* v. *Youdin*, supra, 95. "Moreover, to the extent that the trial court's [oral ruling] may be viewed as ambiguous . . . we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal quotation marks omitted.) *State* v. *Marquis*, 36 Conn. App. 803, 804, 653 A.2d 833, cert. granted, 233 Conn. 902, 657 A.2d 641 (1995). Because the defendant failed to seek articulation, we must assume that the trial court acted properly. Id.

## II

The defendant next claims that the trial court improperly denied his application to participate in a pretrial alcohol education program. We disagree.

The following additional facts are necessary for the resolution of this claim. After the trial court denied the defendant's motion to dismiss, the defendant requested that his application for participation in a pretrial alcohol education program be granted. The state objected, claiming that the defendant's application was untimely in light of the facts that the trial on the merits had been completed and that the parties were awaiting a finding of the trial court. The state argued that the language of the statute restricted the program's applicability to pretrial situations. The trial court allowed the defendant to take the stand and to testify as to his eligibility for the program. The trial court then found that the defendant did meet the eligibility requirements for the program, but exercised its discretion to deny his application for participation in the program.

General Statutes § 54-56g[4] establishes a pretrial alcohol education program for persons charged with a viola-

[4] General Statutes § 54-56g provides in pertinent part: "(a) There shall be a pretrial alcohol education system for persons charged with a violation of section 14-227a. Upon application by any such person for participation in such system and payment to the court of an application fee of fifty dollars,

tion of § 14-227a. Applications for participation in this program may be granted or denied at the discretion of the trial court. General Statutes § 54-56g (b). Our scope of review of such a decision is, therefore, limited to whether the trial court abused its discretion. We conclude that it did not.

The defendant did not apply for participation in the pretrial alcohol education program until after the trial on the merits had been completed. By its terms, the alcohol education program established by § 54-56g applies to a defendant whose case has not yet come to trial. Successful completion of the program results in a dismissal of the charges against a defendant without the necessity of a trial. General Statutes § 54-56g (b). The very purpose of the statute could not, therefore, be fulfilled here where the trial had already commenced. The

the court shall, but only as to the public, order such information or complaint to be filed as a sealed information or complaint, provided such person states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under penalties of perjury that he has never had such system invoked in his behalf and that he has not been convicted of a violation of section 53a-56b or 53a-60d, a violation of subsection (a) of section 14-227a before or after October 1, 1981, or a violation of subdivision (1) or (2) of subsection (a) of section 14-227a on or after October 1, 1985, and that he has not been convicted in any other state at any time of an offense the essential elements of which are substantially the same as section 53a-56b or 53a-60d or subdivision (1) or (2) of subsection (a) of section 14-227a. Unless good cause is shown, a person shall be ineligible for participation in such pretrial alcohol education system if his alleged violation of section 14-227a caused the serious physical injury, as defined in section 53a-3, of another person. The fee imposed by this subsection shall be credited to the Criminal Injuries Compensation Fund established by section 54-215.

"(b) The court, after consideration of the recommendation of the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case, may, in its discretion, grant such application. . . . If such defendant satisfactorily completes the assigned program he may apply for dismissal of the charges against him and the court, on reviewing the record of his participation in such program submitted by the Bail Commission and on finding such satisfactory completion, shall dismiss the charges. . . ."

trial court did not, therefore, abuse its discretion in denying the defendant's application for participation in the pretrial alcohol education program outlined in § 54-56g.

The judgment is affirmed.

In this opinion the other judges concurred.