# NICHOLAS R. DINAPOLI, JR., TRUSTEE, ET AL. *v.* JOHN P. COOKE ET AL.
## (14290)

Foti, Lavery and Spear, Js.

Argued June 11—officially released October 1, 1996

*Paul L. Bollo*, for the appellants-appellees (defendants).

*Thomas W. Beecher*, for the appellees-appellants (plaintiffs).

FOTI, J. The defendants[1] appeal from the judgment of the trial court rendered in favor of the plaintiffs[2] on their complaint and on the defendants' counterclaim. The plaintiffs' complaint alleges that the defendants tortiously interfered with their sale of the land to the state of Connecticut. The defendants' counterclaim alleges that the plaintiffs breached a contract with the defendants with respect to a portion of the subject land and that the plaintiffs violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[3] The defendants assert that the trial court (1) improperly found that the plaintiffs proved the malice and proximate cause elements of the tort of intentional interference with a business relationship, and that the plaintiffs had not breached their agreement and had not engaged in unfair or deceptive trade practices, and (2) abused its discretion in awarding punitive damages. The plaintiffs cross appeal, claiming that the trial court improperly (1) found that the plaintiffs did not prove damages and, consequently awarded only nominal damages, and (2) limited punitive damages to

---

[1] The defendants are John P. Cooke and Torrey M. Cooke.

[2] The plaintiffs are Nicholas R. DiNapoli, Jr., trustee, and Carl H. Lecher, trustee.

[3] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

attorney's fees. We affirm the judgment on the complaint and on the counterclaim.

The relevant facts and procedural history are as follows. The plaintiffs owned a forty-nine acre tract of land situated on Nod Hill and Old Branchville Roads in Ridgefield. On November 18, 1986, they obtained approval from the Ridgefield planning and zoning commission for a planned residential development on the property. As a condition of the approval, the plaintiffs were required to convey approximately eighteen acres of the subdivision to the town of Ridgefield to be dedicated as open space. The plaintiffs conveyed the eighteen acres to the town on November 20, 1986.

On January 30, 1987, the state department of transportation advised the plaintiffs that the state was going to acquire a portion of their property for the reconstruction of Route 7. Prior to conveying the eighteen acres to the town, the plaintiffs had inquired of the department of transportation on two occasions whether there were planned condemnation proceedings against their property. In each instance, they were told that the plans for Route 7 were dormant. The plaintiffs ceased their construction activities on the subdivision roadway after the notice of the forthcoming condemnation.

In March, 1988, the state informed the plaintiffs that the plan to acquire a portion of their property had been postponed indefinitely. The plaintiffs initiated an inverse condemnation action against the state that ultimately was settled by way of a stipulated judgment. The terms of the stipulation required the state to pay to the plaintiffs the sum of $2,800,000. In return, the plaintiffs were to convey two noncontiguous parcels to the state totaling eighteen acres. One of the parcels (parcel A) consisted of approximately ten acres from the open space portion of the subdivision. The stipulation necessitated a reacquisition of the ten acre parcel

that the plaintiffs had previously conveyed to the town and the substitution of another ten acre parcel (parcel B) to meet the open space requirement. The other parcel to be conveyed to the state (parcel C) was eight acres from another portion of the subdivision. The stipulation provided that the entire $2,800,000 was to be paid for parcel C and that parcel A was to be transferred for "no consideration." The town approved the plaintiffs' proposal to substitute parcel B for parcel A as open space to comply with a condition of the subdivision approval. This approval took place at a town meeting on February 22, 1989.

The defendants own a parcel of land that partially abuts the plaintiffs' property. They entered into an agreement with the plaintiffs on November 6, 1986, in which they agreed not to oppose the development of the subdivision, and the plaintiffs agreed, inter alia, to give the defendants an option to purchase lot 1 of the subdivision for a price equal to 85 percent of the fair market value of the lot.

The defendants opposed the substitution of parcel B for parcel A at the February 22, 1989 town meeting. Thereafter, Torrey Cooke brought an action to preclude the property exchange, claiming that such an exchange violated certain statutory provisions regarding public and charitable uses. The case was subsequently dismissed because Cooke lacked standing to bring the action. While this matter was in litigation, the state and the plaintiffs opened the stipulated judgment in the inverse condemnation case and agreed to substitute parcel B for parcel A, thereby leaving the town with parcel A as open space. Title closed on the substituted parcel B and parcel C on January 6, 1990.

After the Superior Court dismissed Torrey Cooke's action, the plaintiffs instituted this action against the defendants alleging intentional and malicious interfer-

ence with the plaintiffs' business expectations and business relations.[4] The defendants' counterclaim alleges that the transfer by the plaintiffs to the state breached the November 6, 1986 agreement between the plaintiffs and the defendants, and that the breach precluded the defendants from acquiring lot 1 at a price below the fair market value. In the second count of the counterclaim, the defendants allege that the plaintiffs violated CUTPA by misleading the defendants as to their intent and as to any threat of condemnation of the open space property.

The trial court found for the plaintiffs on the complaint, reciting numerous acts of deliberate and malicious interference with the plaintiffs' land transfer to the state. The court stated, however, that "in view of the lack of persuasive evidence on the measure of damages, the court finds certainly that [the plaintiffs] are entitled to nominal damages and awards the sum of one ($1) dollar." The court thereafter held a separate hearing and awarded punitive damages in the amount of $21,080. This appeal and cross appeal followed.

## I

The defendants first allege that the trial court made incorrect findings of fact. We view this as a wholesale attack on the court's findings based on a claim that the court could not have reasonably concluded as it did on the bases of the subordinate facts found and the reasonable inferences drawn from those facts. Our review of the record discloses that the trial court reasonably and logically concluded as it did, and that the decision of the trial court was not clearly erroneous in light of the evidence and pleadings in the record as a

---

[4] The plaintiffs alleged that Torrey Cooke's injunction action was maliciously instituted, that the defendants had made false statements to state and town official regarding the plaintiffs' property and that the defendants real motive was to force the plaintiffs to buy their property.

whole. See *Dalia* v. *Lawrence*, 226 Conn. 51, 71–72, 627 A.2d 392 (1993).

"On appeal, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous or whether the decision is otherwise erroneous in law. . . . Determining whether a trial court's decision is clearly erroneous involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 32, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994).

The trial court found that the plaintiffs were not entitled to actual damages and awarded only nominal damages. "Nominal damages mean no damages. They exist only in name and not in amount." (Internal quotation marks omitted.) *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 504, 656 A.2d 1009 (1995); see also *Sessa* v. *Gigliotti*, 165 Conn. 620, 622, 345 A.2d 45 (1973). Furthermore, such damages "may be a mere peg to hang costs on . . . ." (Internal quotation marks omitted.) *Riccio* v. *Abate*, 176 Conn. 415, 420, 407 A.2d 1005 (1979). It is also well established that an award of nominal damages is appropriate where there is insufficient evidence produced at trial to prove actual damages. See, e.g., *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 477, 590 A.2d 431 (1991).

The trial court gave no reasons for its finding that the plaintiffs were entitled to only nominal damages other than its statement that "a mathematical computation does not necessarily establish damages."[5] The plaintiffs did not file a motion to articulate, and, to the extent that statements elsewhere in the memorandum of decision that the plaintiffs "were indeed damaged" and "damages have occurred" make the decision ambiguous, "we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal quotation marks omitted.) *State* v. *Arisco*, 39 Conn. App. 11, 16, 663 A.2d 442 (1995). We read this record, therefore, to support the trial court's finding that there were no actual damages. Our review of the record discloses nothing that makes this finding clearly erroneous.

## II

We turn now to the question of whether the trial court's finding that the plaintiffs failed to prove damages precludes a judgment for the plaintiffs. The defendants did not claim on appeal that it was improper for the trial court to award nominal damages in a case involving tortious interference with a business relationship after finding no actual damages. We address this issue as a matter of plain error.[6] We "may in the interests of justice notice plain error not brought to the attention

[5] The trial court did state that the 10 percent interest penalty in the stipulation between the plaintiffs and the state was the state's obligation. This statement, although correct, does not help in determining the basis of the court's decision on damages. Moreover, the statement makes no difference in light of the defendants' claim that the interest rate in the stipulation is simply illustrative of what would be a reasonable rate of interest, not that the defendants were bound by the stipulation.

[6] The parties, at our direction, submitted supplemental briefs after oral argument on the following question: "Did the trial court commit plain error in awarding nominal and punitive damages despite its finding that the plaintiffs failed to prove actual damage. See *Taylor* v. *Sugar Hollow Park, Inc.*, 1 Conn. App. 38, 39, 467 A.2d 935 (1983)."

of the trial court. Practice Book § 4185. Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Knight*, 29 Conn. App. 675, 676–77, 617 A.2d 913 (1992). Plain error review may be appropriate "where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) *Skrzypiec* v. *Noonan*, 228 Conn. 1, 15, 633 A.2d 716 (1993).

The essential elements of the tort of unlawful interference with a business relationship are (1) a business relationship between the plaintiff and another party, (2) the defendant's intentionally interfering with it while knowing of the relationship and (3) as a result of the interference, the plaintiff's suffering actual loss. *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, 169 Conn. 407, 415, 363 A.2d 86 (1975); see also *Herman* v. *Endriss*, 187 Conn. 374, 377, 446 A.2d 9 (1982).

This court has held that it was improper for a trial court to award a plaintiff $3500 in damages after finding that a defendant had tortiously interfered with the plaintiff's business expectancy, but that there was no credible evidence of actual damage. We stated that "[u]nlike other torts in which liability gives rise to nominal damages even in the absence of proof of actual loss . . . it is an *essential element* of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." (Citation omitted; emphasis added.) *Taylor* v. *Sugar Hollow Park, Inc.*, 1 Conn. App. 38, 39, 467 A.2d 935 (1983).

It is beyond dispute that the trial court found that the plaintiffs were damaged by the acts of the defendants. The court stated: "Those various and sundry acts, together with the initial 'extractions' obtained from the [plaintiffs] by the [defendants], the funds which the [plaintiffs] paid to them for the potable water system which might suggest the word extortion to a lay person and the comment, 'pay me a million dollars for my property and I will go away,' all of which the court finds to be credible, constrains [me] to find that the motive indeed was malicious and the interference resulting in the injury is certainly wrong beyond the fact of the interference itself. . . . The nexus between the tortious conduct and injury to the [plaintiffs] becomes immediately apparent. The malicious motivation and the obvious success of the improper conduct lead to a single inescapable conclusion, and that is that the [plaintiffs] were indeed damaged by these acts of the defendants. The evaluation of those damages, however, is most difficult to ascertain."

We recognize the distinction between "damage" and "damages." The word "damage" is defined as the "[l]oss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property. The word is to be distinguished from its plural, 'damages' which means a compensation in money for a loss or damage. . . . By damage, we understand every loss or diminution of what is a man's own, occasioned by the fault of another. . . ." Black's Law Dictionary (4th Ed. 1951). The pecuniary compensation for loss, detriment or injury is "damages"; actual damages are synonymous with compensatory damages and with general damages. "Although the words, 'damage,' 'damages' and 'injury,' are sometimes treated loosely as synonymous, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or

harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered. 22 Am. Jur. 2d [Damages] § 1 [1988]." Ballentine's Law Dictionary (3d Ed. 1969) p. 303.

It is an essential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss, i.e., damage; *Taylor* v. *Sugar Hollow Park, Inc.*, supra, 1 Conn. App. 39; "actual damage suffered"; *Goldman* v. *Feinberg*, 130 Conn. 671, 675, 37 A.2d 355 (1944); "that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." Id. Such a determination is a question for the trier of fact; *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, supra, 169 Conn. 415; as is the question of whether the plaintiff has suffered "actual loss." Id. "A plaintiff states an actionable cause [for tortious interference with a contract] by alleging that the defendant intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an *actual loss*." (Emphasis added.) *Herman* v. *Endriss*, supra, 187 Conn. 377.

The trial court found that the plaintiffs had sustained or suffered actual damage, or actual loss, but the court could not mathematically compute the precise or approximate pecuniary compensation, or damages, for that loss. The actual damage was some or all of the nine month and five day delay in consummating the almost three million dollar transaction pursuant to the stipulated judgment.

### III

The defendants claim that the trial court improperly rendered judgment for the plaintiffs on the defendants' counterclaim because (1) the plaintiffs breached the covenant of good faith and fair dealing implicit in the

November 6, 1986 contract between the plaintiffs and the defendants, (2) the plaintiffs breached the November 6, 1986 contract by transferring lot 1 as part of parcel C to the state, thereby vitiating the defendants' right to purchase the lot at a price below the fair market value, and (3) the defendants proved that the plaintiffs violated CUTPA.

The trial court's memorandum of decision does not address the defendants' claim of a violation of the implied covenant of good faith and fair dealing and the defendants did not request an articulation from the trial court on that issue. The record is, therefore, inadequate for us to review this claim. See *Wilson* v. *Hryniewicz*, 38 Conn. App. 715, 720, 663 A.2d 1073, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995); *DeLuca* v. *DeLuca*, 37 Conn. App. 586, 588, 657 A.2d 690 (1995).

We agree with the trial court's finding that the plaintiffs clearly gave the state a deed in lieu of condemnation with respect to parcel C, eliminating the defendants' option to purchase lot 1 pursuant to the terms of the November 6, 1986 agreement. The agreement states: "The foregoing [right to purchase lot 1] is subject to possible condemnation by the state of Connecticut for highway purposes or deed to the state of Connecticut in lieu of said condemnation." This clause disposes of the defendants' claim and no further discussion is warranted.

The defendants' sparsely briefed CUTPA claim is no more than an assertion that the trial court should have credited the defendants' evidence and found in their favor. Our review convinces us that the trial court's rejection of the CUTPA claim was not clearly erroneous.

IV

By way of cross appeal, the plaintiffs claim that the trial court improperly (1) limited the award of punitive

damages to the amount of attorney's fees incurred by the prevailing party, and (2) concluded that the plaintiffs failed to establish the amount of their consequential damages and awarded the nominal sum of $1 in consequential damages.

The plaintiffs first argue that punitive damages in addition to attorney's fees were warranted. Such damages are limited to the expenses of litigation less taxable costs. *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). We, as an intermediate appellate court, will not reexamine or reevaluate Supreme Court precedent; whether such precedent should be reevaluated and possibly discarded is not for this court to decide. *Somohano* v. *Somohano*, 29 Conn. App. 392, 393–94, 615 A.2d 181 (1992).

The plaintiffs next claim that the trial court improperly failed to establish the amount of consequential damages. They argue that it was a clear abuse of discretion by the trial court, having determined that the plaintiffs did not collect $2.8 million until nine months and five days after they otherwise would have collected it because of the actions of the defendants, not to award consequential damages in excess of the nominal award of $1. We do not agree.

Our review of the record discloses that the trial court properly concluded that the plaintiffs had failed to sustain their burden in presenting sufficient evidence for the awarding of compensatory damages. The burden of proving damages is on the party claiming them. *Gargano* v. *Heyman*, 203 Conn. 616, 620, 525 A.2d 1343 (1987). Claimed damages are an essential element of the proof and must be proved with reasonable certainty. *Simone Corp.* v. *Connecticut Light & Power Co.*, 187 Conn. 487, 495, 446 A.2d 1071 (1982). The plaintiffs argued that a 10 percent interest amount was the proper measure of damages, as the amount written as a penalty

in the plaintiffs' stipulation with the state. The trial court properly noted that the penalty had been deleted from the revised stipulated judgment, and also that while that might have been the state's penalty, there had been no evidence presented that such a penalty was transferable to the defendants. The record is also devoid of any evidence that the substitution of properties that facilitated the actual closing could not have been done anytime after the defendants sued the town of Ridgefield. While it is clear that some delay was caused by the action of the defendants, no evidence was presented to demonstrate that the plaintiffs' transaction with the state could not have been accomplished earlier than in nine months and five days.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

SPEAR, J., dissenting. I concur with that part of the majority opinion that affirms the judgment of the trial court on the defendants' counterclaim. I respectfully dissent with respect to the trial court's judgment on the plaintiffs' complaint. I conclude that it was plain error[1] for the court to award nominal damages on the plaintiffs' claim of tortious interference with a business relationship after finding that no actual damages were proven. Accordingly, I would reverse the judgment on the complaint.

The majority correctly points out that "[u]nlike other torts in which liability gives rise to nominal damages even in the absence of proof of actual loss . . . it is an *essential element* of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." (Citation omitted; emphasis added.) *Taylor* v.

---

[1] The majority has properly stated the plain error rule and noted that the parties were given the opportunity to file supplemental briefs on the question of plain error.

*Sugar Hollow Park, Inc.*, 1 Conn. App. 38, 39, 467 A.2d 935 (1983); see also *Conrad* v. *Erickson*, 41 Conn. App. 243, 246–47, 675 A.2d 906 (1996). I view *Taylor* as standing for the proposition that it is impermissible to award nominal damages in a case involving tortious interference with business relations where actual damages have not been proven. The trial court's failure to find actual damages is thus fatal to the plaintiffs' cause of action here.

The precedent on which *Taylor* rests includes *Goldman* v. *Feinberg*, 130 Conn. 671, 37 A.2d 355 (1944). In *Goldman*, our Supreme Court stated with respect to a case involving tortious interference with business relations: "In other words, it does not appear that the plaintiff has sustained any damage as a result of those acts. For that reason the plaintiff has not made out a complete cause of action for unlawful interference with his business." Id., 676. "A plaintiff states an actionable cause by alleging that the defendant intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an actual loss." *Herman* v. *Endriss*, 187 Conn. 374, 377, 446 A.2d 9 (1982).

The majority addresses our holding in *Taylor* by stating that the trial court found that the plaintiffs had suffered actual damage, but the court could not mathematically compute the "precise or approximate pecuniary compensation, or damages, for their loss. The actual damage was some or all of the nine month and five day delay in consummating the almost three million dollar transaction pursuant to the stipulated judgment." I disagree.

The trial court stated: "However, a mathematical computation does not necessarily establish damages, despite the nature of the defendants' interference and despite the fact that the tort had been made out and

damages have occurred. *In view of the lack of persuasive evidence* on the measure of damages, the court finds certainly that the trustees are entitled to nominal damages and awards the sum one ($1) dollar." (Emphasis added.) It is clear that it was the lack of evidence that led the court to deny compensatory damages to the plaintiffs and not the difficulty of mathematically computing the loss. More important, the plaintiffs point to no evidence that the defendants were responsible for the delay in closing the sale of their land to the state. They simply assert that the transaction would have closed by April 21, 1989, had Torrey Cooke not brought suit to prohibit the transfer. The plaintiffs then reason that they are entitled to interest on $2,800,000 from April 21, 1989, to January 26, 1990, the date of the closing with the state.

My review of the evidence discloses that the town filed suit by way of a complaint dated April 17, 1989, for a declaratory judgment seeking to authorize the transfer of parcel A to the plaintiffs in exchange for parcel B. The matter was returnable to the Superior Court on May 2, 1989, and was apparently pending during the entire period of time that the plaintiffs claim that the defendants were responsible for the delay in closing. This action could well have caused the trial court to conclude that the defendants were not responsible for any part of the delay in closing the transaction. Obviously, the plaintiffs could not convey parcel A to the state until they acquired it from the town and the town, by its own action, decided that a court ruling was necessary prior to conveying parcel A to the plaintiffs.

In its lawsuit, the town alleged that parcel A is "open space and therefore public, and thus governed by the charitable use statute section 47-2 of the Connecticut General Statutes." The town, thus, agreed with the defendant Torrey Cooke's claim in her lawsuit that parcel A was open space that was governed by General

Statutes § 47-2. The town's action was dismissed on December 7, 1990, for failure to prosecute with reasonable diligence, a time well after the closing of January 26, 1990. In view of the evidence, the trial court's conclusion that the plaintiffs failed to prove damages is certainly supported in the record. It is clear that four days before the April 21, 1990 closing deadline the town had decided that it would not convey parcel A without a declaratory judgment ruling from the Superior Court. That decision apparently did not change during the nine month, five day period in question and parcel A was never transferred to the plaintiffs.

I conclude that plain error review and reversal is proper here because the judgment for the plaintiffs on the complaint is directly contrary to the holding of *Taylor*. It is axiomatic that Supreme and Appellate Court precedent that is directly on point binds the Superior Court. Plain error review may be appropriate "where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) *Skrzypiec* v. *Noonan*, 228 Conn. 1, 15, 633 A.2d 716 (1993). To allow the judgment to stand would constitute an injustice between the parties because the improper award of nominal damages was the predicate for the award of punitive damages consisting of the plaintiffs' attorney's fees of $21,080. Because the award of nominal damages was improper, the punitive damage award is also improper.

I would reverse the judgment for the plaintiffs on the complaint and remand the case to the trial court with direction to render judgment for the defendants on the plaintiffs' complaint.