STATE OF CONNECTICUT *v.* NORMAN J. BELIVEAU
(AC 16215)

Lavery, Landau and Sullivan, Js.

Argued November 9, 1998—officially released March 30, 1999

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Paul Matasavage,* for the appellant (defendant).

*John A. East III,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Norman J. Beliveau, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1) and (2), operating a motor vehicle with a suspended operator's license in violation of General Statutes § 14-215 and reckless driving in violation of General Statutes § 14-222. The state filed a substitute part B information charging the defendant with operating a motor vehicle with a suspended operator's license in violation of General Statutes § 14-215 (c) and, following a trial to the court, the trial court

found the defendant guilty as to that offense. This appeal followed.

On appeal, the defendant claims that the trial court improperly denied his motion to suppress (1) all of the statements he made after his arrest for breach of the peace because the arrest was pretextual as well as the statements he made after the police used deception to elicit incriminating information, (2) two incriminating statements he made while on his porch prior to his arrest for breach of the peace because the police elicited those statements during a custodial interrogation without first advising him of his Miranda[1] rights and (3) incriminating statements he made immediately prior to the administration of several field sobriety tests. We affirm the judgment of the trial court.

The following facts and procedural history are pertinent to a resolution of the issues on appeal. On July 14, 1994, at approximately 5:30 p.m., Richard Stebar observed the defendant driving a white van erratically on Route 8. Stebar followed the van until it stopped in front of 52 Hotchkiss Street in Naugatuck. Stebar watched the defendant exit the van and stagger toward the house. At approximately 6 p.m., Stebar relayed that information to two police officers from the Naugatuck police department. On the basis of that information, the officers went to the defendant's home. Officer Jeremiah Scully and the defendant discussed Stebar's allegations and, when the defendant disregarded Scully's admonitions to calm down, Scully arrested him for breach of the peace.

The defendant was transported to the police station and, prior to being advised of his Miranda rights, he agreed to perform several field sobriety tests, each of which he failed. After the defendant was advised of his Miranda rights, he agreed to submit to a Breathalyzer

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

test. The Breathalyzer results indicated that at 6:42 p.m., the defendant's blood alcohol content was 0.175 percent, and at 7:17 p.m. his blood alcohol content was 0.162 percent.

The defendant filed a pretrial motion to suppress the incriminating statements he had made to the police while he was in his kitchen, on his porch, in the police cruiser and at the police station. On April 25 and 26, 1996, the trial court held an evidentiary hearing to decide the defendant's motion. On April 29, 1996, the trial court denied the defendant's motion to suppress. The defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor, operating a motor vehicle while his license was under suspension for operating a motor vehicle while under the influence of intoxicating liquor and reckless driving, and this appeal followed.

I

The defendant first claims that the trial court improperly denied his motion to suppress (1) all of the statements he made after his arrest for breach of the peace because this arrest was pretextual and (2) the statements he made after the police utilized deception to elicit incriminating information. Specifically, the defendant first claims that "Officer Scully had no right or reason to wrongfully arrest [him] for breach of [the] peace other than as a pretext or subterfuge to avoid having to leave the property and to be able to continue talking to [him] about Stebar's claims that [he] was driving in an erratic manner . . . ." Second, he claims that "Scully lied to [him] about the state police having his plate number" and that this deception constituted a "coercive act of subterfuge" that enabled the police to elicit incriminating information. We decline to review either of these claims.

At oral argument, the state questioned whether the defendant had distinctly raised these claims at the suppression hearing. "This court will not review issues of law that are raised for the first time on appeal." *State v. Harvey*, 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." *Keating v. Glass Container Corp.*, 197 Conn. 428, 431, 497 A.2d 763 (1985). "Claims that were not distinctly raised at trial are not reviewable on appeal." *State v. Pickles*, 28 Conn. App. 283, 286–87, 610 A.2d 716 (1992).

We conclude that the defendant failed to raise either of these claims distinctly during the suppression hearing. At the suppression hearing, although the defendant questioned "whether or not the breach of peace occurred as a result of an illegal arrest," he neither cites, nor can we locate in the transcript of the suppression hearing, any reference to his claim that the police used his arrest as a pretext to continue their investigation of Stebar's allegations. We decline the defendant's invitation to transform this cryptic reference into the claim now raised on appeal. Additionally, the defendant neither cites, nor can we locate, any reference to his claim that the police used deception to obtain incriminating statements. On appeal, the defendant did not contend that these claims were reviewable pursuant to *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[2]

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond

or subject to plain error review. Consequently, we decline to review these claims.

Were we to assume that the defendant distinctly raised both of these claims at the suppression hearing, we would reach the same conclusion. Although the trial court denied the defendant's motion to suppress, it did not comply with Practice Book § 64-1 (a) because it neither issued a written memorandum of decision nor signed the transcript of its oral decision. See Practice Book § 64-1 (a);[3] *State* v. *Rosedom*, 34 Conn. App. 141, 143, 640 A.2d 634 (1994). "While we do not condone the court's failure to comply with [Practice Book] § 4059 [now § 64-1 (a)], and would decline in most instances to search the transcript to ascertain the factual basis in support of the trial court's ruling, we would not exalt form over substance if the deficiency were of a technical nature." *State* v. *Rios*, 30 Conn. App. 712, 714, 622 A.2d 618 (1993); see *State* v. *Rosedom*, supra, 143.

In the present case, although there is an unsigned transcript of the trial court's oral decision, it is devoid of any reference to either of the defendant's claims. "It is the appellant's duty to take the necessary steps to provide us with an adequate record for appellate review. . . . The defendant could have ensured the adequacy of the record by filing a motion for articulation pursuant to Practice Book § 4051 [now § 66-5] asking the trial

a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] Practice Book § 64-1 (a), formerly § 4059, provides in relevant part: "The court shall state its decision either orally or in writing, in all of the following . . . (4) in ruling on motions to suppress under Section 41-12 . . . . The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ."

court to set forth the basis and reasoning for its decision, or by filing a motion to compel the trial court to file a memorandum of decision pursuant to Practice Book § 4183 [now § 60-2]." (Citations omitted.) *State* v. *Rosedom*, supra, 34 Conn. App. 144–45. The defendant elected to do neither. Accordingly, we decline to review these claims.

## II

The defendant next claims that the trial court improperly denied his motion to suppress two incriminating statements he made while on his porch prior to his arrest for breach of the peace because the police elicited these statements during a custodial interrogation without first advising him of his *Miranda* rights. We also decline to review this claim.

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 267, 681 A.2d 922 (1996). "Two discrete inquiries are essential to the determination [of custody]: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry . . . is factual and will not be overturned unless it is clearly erroneous. . . . The second inquiry . . . requires an application of the controlling legal standard to the historical facts. This ultimate determination . . . presents a mixed question of law and fact qualifying for independent review." (Citations omitted; internal quotation marks omitted.) *State* v. *Walton*, 41 Conn. App. 831, 835–36, 678 A.2d 986 (1996); see *State* v. *Tomasko*, supra, 267–69.

In the unsigned transcript of its oral decision, the trial court did not indicate whether the defendant was in custody when, prior to his arrest for breach of the peace, he was standing on his porch and made these two incriminating statements.[4] Of greater significance is that the trial court failed to articulate the factual circumstances surrounding Scully's questioning of the defendant on his porch. See *State* v. *Walton,* supra, 41 Conn. App. 835–36; see also *State* v. *Tomasko,* supra, 238 Conn. 269. Without these predicate factual findings, we cannot determine whether the defendant was in custody when he made these incriminating statements and, therefore, entitled to *Miranda* warnings.

It is the appellant's duty to take the necessary steps to provide us with an adequate record for appellate review. *State* v. *Rios,* supra, 30 Conn. App. 715. As we have stated, the defendant filed neither a motion for articulation nor a motion to compel the trial court to file a memorandum of decision. "When our rules of practice are not followed, and the record is not rectified, we are left to guess or speculate as to the existence of a factual predicate." *State* v. *Rosedom,* supra, 34 Conn. App. 145–46. As it is not the function of this court to find facts, we decline to review the defendant's claim.

---

[4] In denying the defendant's motion to suppress, although the trial court stated that "[t]he defendant was not then in custody, and that those statements are permissible," it is unclear whether the trial court was referring to "[a]ll of the statements which were made [by the defendant] in the kitchen" or the statements made by the defendant on his porch prior to his arrest for breach of the peace or other statements made by the defendant. "We cannot guess or speculate on the existence of a factual predicate to support a conclusion of law;" *Economy Sales & Service Co.* v. *Family Center Pharmacy, Inc.,* 33 Conn. App. 822, 823, 639 A.2d 1042 (1994); and "[t]his court will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted.) *State* v. *Arisco,* 39 Conn. App. 11, 15, 663 A.2d 442 (1995).

"Moreover, to the extent that the trial court's [oral ruling] may be viewed as ambiguous . . . we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." (Internal

## III

In his final claim, the defendant contends that the trial court improperly denied his motion to suppress incriminating statements he made in response to Scully's request that he perform several physical sobriety tests. Specifically, he claims that those statements are inadmissible because they were elicited in response to custodial interrogation and the police had not yet advised him of his *Miranda* rights. We disagree.[5]

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997).

Scully testified that, at the police station, he asked the defendant if he would submit to the so-called California physical sobriety tests.[6] The defendant responded that

quotation marks omitted.) Id., 16. The defendant did not file a motion for articulation pursuant to Practice Book § 66-5.

[5] The defendant neither invoked the state constitution, nor provided an independent analysis of his claim under the state constitution; therefore, we limit our analysis of his claim to the protection afforded by the federal constitution. See *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998); *State* v. *Barnes*, 232 Conn. 740, 744 n.4, 657 A.2d 611 (1995).

[6] Scully testified that those physical sobriety tests include the "horizontal gaze nystagmus" test, the "walk and turn" test and the "one leg stand" test. "The 'horizontal gaze nystagmus' test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated 'the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct.' 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A-

he did not need the tests because he was "half in the bag" and he had consumed a "six-pack or two of beer." Additionally, the defendant admitted that he was drunk. Defense counsel moved to suppress those statements, but the trial court concluded that they were admissible pursuant to the United States Supreme Court's decision in *Pennsylvania* v. *Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990).

Although the trial court neither issued a memorandum of decision nor signed the transcript of its oral decision, in this instance its failure to comply with Practice Book § 64-1 (a) constitutes a technical defect because the unsigned transcript of its oral decision sets forth the specific legal basis it relied on in denying the defendant's motion to suppress the statements. Additionally, there is no dispute that the defendant made the incriminating statements in response to Scully's request to perform the California sobriety tests. Consequently, this claim is appropriate for review. See *Connecticut National Bank* v. *Browder*, 30 Conn. App. 776, 778–79, 622 A.2d 588 (1993); *State* v. *Rivera*, 30 Conn. App. 224, 225 n.1, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993).

In *Pennsylvania* v. *Muniz*, supra, 496 U.S. 585, prior to advising the defendant of his *Miranda* rights, the police transported him to the police station. At the station, the police asked the defendant to submit to the "horizontal gaze nystagmus" test, the "walk and turn" test and the "one leg stand" test. Id., 602. The defendant made several incriminating statements while he was

43, 8A-45 (1989). The 'walk and turn' test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine. The 'one leg stand' test requires the subject to stand on one leg with the other leg extended in the air for 30 seconds, while counting aloud from 1 to 30." *Pennsylvania* v. *Muniz*, 496 U.S. 582, 585 n.1, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990).

attempting to comprehend an officer's instructions and while he was performing those sobriety tests. Id. Additionally, he made incriminating statements when he was asked to submit to a Breathalyzer test. Id., 604. The defendant claimed that all of those statements were inadmissible because they were elicited before he had been advised of his *Miranda* rights. Id., 602–605.

The Supreme Court rejected the defendant's claim, holding that the police officer's "dialogue with Muniz concerning the physical sobriety tests . . . contained limited and carefully worded inquiries as to whether Muniz understood . . . instructions [about the sobriety tests], but these focused inquiries were necessarily attendant to the police procedure held by the [state] court to be legitimate. Hence, Muniz's incriminating utterances during this phase of the . . . proceedings were voluntary in the sense that they were not elicited in response to custodial interrogation." (Internal quotation marks omitted.) Id., 603–604. Additionally, the court held "that *Miranda* [did] not require suppression of the statements Muniz made when asked [by the police] to submit to a breathalyzer examination. . . [because] Muniz's statements were not prompted by an interrogation within the meaning of *Miranda* . . . ." (Citation omitted.) Id., 604–605. The court held that asking the defendant whether he wished to submit to the breathalyzer test was "necessarily attendant to the legitimate police procedure . . . and [was] not likely to be perceived as calling for any incriminating response." (Citation omitted; internal quotation marks omitted.) Id., 605.

Similarly, in the present case, Scully merely asked the defendant if he would submit to three physical sobriety tests, a question that *Muniz* establishes was necessarily attendant to a legitimate police procedure and was not likely to be perceived as calling for any incriminating response. Consequently, the decision in *Muniz* establishes that in the present circumstances the defendant's statements were properly admissible because they were

uninvited or voluntary in the sense that they were not elicited in response to custodial interrogation.[7]

Our conclusion in this case is further reinforced by the United States Supreme Court's decision in *South Dakota* v. *Neville,* 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983). In *Neville,* the Supreme Court held: "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.* As we stated in *Rhode Island* v. *Innis,* 446 U.S. 291, 301 [100 S. Ct. 1682, 64 L. Ed. 2d 297] (1980), police words or actions *'normally attendant to arrest and custody'* do not constitute interrogation. The police inquiry here . . . is similar to a police request to submit to fingerprinting or photography." (Emphasis added.) *South Dakota* v. *Neville,* supra, 564 n.15; see also *United States* v. *Edmo,* 140 F.3d 1289, 1293 (9th Cir. 1998) (request that defendant submit urine sample did not

---

[7] Our conclusion is limited to the specific facts presented in this case. We express no opinion concerning whether other types of questions that a defendant might be asked prior to or during the administration of field sobriety tests constitute custodial interrogation within the meaning of *Miranda.* For example, in *Pennsylvania* v. *Muniz,* supra, 496 U.S. 603, the Supreme Court noted that the police officer's "dialogue with Muniz concerning the physical sobriety tests . . . [was] not 'words or actions' constituting custodial interrogation, *with two narrow exceptions not relevant here."* (Emphasis added.) The "[t]wo exceptions consist of . . . [the police officer's] requests that Muniz count aloud from 1 to 9 while performing the 'walk and turn' test and that he count aloud from 1 to 30 while balancing during the 'one leg test.' Muniz's counting at the officer's request qualifies as a response to custodial interrogation." Id., 603 n.17.

In this appeal, the defendant asked us to determine only whether Scully's request for him to perform the California physical sobriety tests at the police station constituted custodial interrogation within the meaning of *Miranda,* and whether the incriminating statements he made in response to this question must be suppressed because he was not advised of his *Miranda* rights. The defendant neither claims, nor does the transcript of the trial court's oral decision reflect, that he made any incriminating statements in response to a request to count aloud while performing the "walk and turn" test and the "one leg stand" test. Therefore, the issue of whether the two exceptions set forth in *Muniz* apply to the present case is not before us.

constitute interrogation within meaning of *Miranda*); *Riley* v. *Dorton*, 115 F.3d 1159, 1165 (4th Cir.), cert. denied, 522 U.S.1030, 118 S. Ct. 631, 139 L. Ed. 2d 611 (1997) (request that defendant sign waiver consenting to DNA testing did not constitute interrogation under *Miranda*).

We conclude that the trial court properly determined that the statements made by the defendant in response to Scully's request to perform the physical sobriety tests were properly admissible.

The judgment is affirmed.

In this opinion the other judges concurred.