## MARY ELLEN MURPHY v. COMMISSIONER OF MOTOR VEHICLES
### (SC 16193)

Norcott, Palmer, Sullivan, Vertefeuille and Flynn, Js.

Argued April 20—officially released August 22, 2000

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Barry N. Silver,* for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The dispositive issues in this appeal are: (1) whether the Appellate Court properly concluded that the evidence in the administrative record was insufficient to establish probable cause that the plaintiff, Mary Ellen Murphy, had violated General Statutes § 14-227a;[1] and (2) whether the evidence in the administrative record was sufficient to establish that

[1] General Statutes § 14-227a provides in relevant part: "Operation while under the influence of liquor or drug or while impaired by liquor. (a) Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight. . . ."

the plaintiff had operated her motor vehicle.[2] The defendant, commissioner of motor vehicles (commissioner), appeals from the judgment of the Appellate Court, which reversed the trial court's judgment dismissing the plaintiff's appeal from the decision of the commissioner to suspend the plaintiff's motor vehicle operator's license pursuant to General Statutes § 14-227b.[3]

---

[2] The first of these two issues is the only certified issue in this appeal. See *Murphy* v. *Commissioner of Motor Vehicles*, 251 Conn. 904, 905, 738 A.2d 1091 (1999). The plaintiff distinctly raised the second issue before the Appellate Court. *Murphy* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 127, 128–29, 733 A.2d 892 (1999). Both issues, however, are related, and we conclude that, in briefing the first issue, the plaintiff adequately briefed the second issue as an alternative ground for affirming the judgment of the Appellate Court. "[Although the plaintiff] failed to preserve [the second issue] for appeal by filing a statement of alternative grounds for affirmance pursuant to Practice Book § 84-11 (c), which provides in relevant part [that] [a]ny party desiring to present alternative grounds for affirmance . . . shall file a statement thereof within fourteen days from the issuance of notice of certification . . . we have refused to consider an issue not contained in a preliminary statement of issues only in cases in which the opposing party would be prejudiced by consideration of the issue." (Internal quotation marks omitted.) *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 599–600 n.3, 748 A.2d 278 (2000). Therefore, in this case, we consider the plaintiff's alternative ground for affirmance inasmuch as the defendant, commissioner of motor vehicles, has not argued that he was prejudiced by the plaintiff's failure to file a preliminary statement of issues.

[3] General Statutes § 14-227b provides in relevant part: "Implied consent to test. Procedures for refusal to test or submitting to test blood alcohol content. Hearing procedures. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight,

and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight. . . .

"(e) Upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in

*Murphy* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 127, 132, 733 A.2d 892 (1999).

accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice.

"(f) If such person does not contact the department to schedule a hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (i) of this section.

"(g) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. . . . The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and analysis thereof accurately indicate the blood alcohol content at the time of operation. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases.

"(h) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (i) of this section. . . .

"(i) The commissioner shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section,

The following facts and procedural history are relevant to our disposition of this appeal. On September 9, 1996, the plaintiff was driving a motor vehicle on Spruce Bark Road in Hamden. Spruce Bark Road runs along the Mill River (river). Upon noticing a scenic area by the river, the plaintiff decided to stop and take some photographs. The plaintiff parked and then walked away from her vehicle.[4] As the plaintiff was taking photographs, she heard a low rumble, turned around, and saw her vehicle roll down an embankment and into the river.[5] Thereafter, the plaintiff went to a nearby house

of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, or (B) six months if such person refused to submit to such test or analysis, (2) one year if such person has previously had his operator's license or nonresident operating privilege suspended under this section, and (3) two years if such person has two or more times previously had his operator's license or nonresident operating privilege suspended under this section. . . ."

Although Public Acts 1998, No. 98-182, § 20, incorporated amendments to § 14-227b that became effective January 1, 1999, those amendments are not relevant to this appeal. For convenience, we cite to the current revision of § 14-227b throughout this opinion.

[4] The police report provided in relevant part: "[The plaintiff] stated she exited the vehicle, and the vehicle remained in gear and proceeded down the embankment into the water that runs parallel [with] Whitney Ave[nue in Hamden]." The police report was admitted into evidence at the suspension hearing without objection.

[5] The plaintiff testified during her suspension hearing in relevant part:

"[Barry Silver, Plaintiff's Counsel]: Ms. Murphy, can you tell us, on September 9, about 7, 7:30, what happened that led to this incident here?

"[Plaintiff]: I saw some trees near [the] river, turned around to come back because I carry a camera with me . . . and I turned around and parked the car—and this was after the first accident—parked the car, took my keys out, grabbed my camera, shut the motor off and walked away from the car and started snapping pictures . . . . I did that and then, all of a sudden, heard some noise and then I heard some rumble, and the car started going down the slope right in the river . . . ."

to summon help. At that time, she took some medication to calm herself. At approximately 7:43 p.m., Officer R. J. Cicero of the Hamden police department was called to respond to the plaintiff's location.[6] When Cicero arrived at the scene, he met with the plaintiff. While speaking with the plaintiff, Cicero detected a smell of alcohol on her breath, noticed her stagger as she stood and walked, and observed that her speech was slurred and that her eyes were glassy and bloodshot. The person who allowed the plaintiff to use the telephone also detected the scent of alcohol on the plaintiff's breath.

Cicero asked the plaintiff if she had consumed any alcoholic beverages. The plaintiff denied drinking, but stated that she was "heavily medicated."[7] Cicero then administered certain field sobriety tests to the plaintiff. The plaintiff failed the horizontal gaze nystagmus test[8] and the alphabet test,[9] and refused to attempt the walk

---

[6] The following is a colloquy between the hearing officer, the plaintiff and the plaintiff's counsel during the plaintiff's suspension hearing:

"[Jeffrey Donahue, Hearing Officer]: How long after you stopped did the police arrive?

"[Plaintiff]: I don't recall.

"[Barry Silver, Plaintiff's Counsel]: It would have been within an hour?

"[Plaintiff]: Yes, definitely within an hour . . . ."

[7] However, Cicero noted at the bottom of the "Officer's DWI Arrest and Alcohol Test Refusal or Failure Report" that the plaintiff admitted drinking wine between 2 and 2:30 p.m. on the day of the accident. It is unclear at what point during Cicero's investigation the plaintiff made this admission with respect to the consumption of wine.

[8] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Beliveau*, 52 Conn. App. 475, 483 n.6, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999); see also *State* v. *Merritt*, 233 Conn. 302, 303 n.1, 659 A.2d 706 (1995).

[9] The police report provides that the plaintiff "was asked to recite the entire alphabet [and that] while reciting the alphabet, at R, she continued, U, T, S, W, V, Z."

and turn test[10] and the one leg stand test,[11] explaining that she previously had suffered injuries to her right leg as a result of a prior accident.

Consequently, Cicero placed the plaintiff under arrest for driving under the influence of intoxicating liquor in violation of § 14-227a. Upon arrest, Cicero advised the plaintiff of her constitutional rights. The plaintiff was then transported to the Hamden police department, at which she, again, was advised of her constitutional rights and also was given an implied consent advisory. The plaintiff nevertheless refused to submit to a breath test for blood alcohol content.

In accordance with § 14-227b (e), the plaintiff's license was suspended for six months for refusing to submit to a breath test. See footnote 3 of this opinion. Subsequently, the plaintiff requested, and was granted, pursuant to § 14-227b (e) and (g), respectively, an administrative hearing to contest the license suspension resulting from her refusal to be tested. Section 14-227b (g) specifies that a hearing to suspend a person's license "shall be limited to a determination [by the commissioner] of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under

---

[10] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *State* v. *Beliveau*, 52 Conn. App. 475, 483–84 n.6, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999).

[11] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for 30 seconds, while counting aloud from 1 to 30." (Internal quotation marks omitted.) *State* v. *Beliveau*, 52 Conn. App. 475, 483–84 n.6, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999).

arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." General Statutes § 14-227b (g); see, e.g., *Fishbein* v. *Kozlowski*, 252 Conn. 38, 46–47, 743 A.2d 1110 (2000). At the suspension hearing, an administrative hearing officer, acting on behalf of the commissioner,[12] found that all four of the criteria set forth in § 14-227b (g) were met. Accordingly, the commissioner ordered that the plaintiff's license be suspended.

The plaintiff appealed the commissioner's decision to the trial court pursuant to General Statutes § 4-183 (a).[13] The plaintiff claimed that there was insufficient evidence to support a finding of probable cause that she had violated § 14-227a. The plaintiff also claimed that the commissioner erroneously found that she had been operating her vehicle. The trial court found in favor of the commissioner and rendered judgment dismissing the plaintiff's appeal. The plaintiff then appealed to the Appellate Court, claiming "that the trial court improperly (1) concluded that the police officer had probable cause to arrest her for operating a motor vehicle while under the influence of intoxicating liquor, (2) held that the hearing officer's written decision was not defective in that the decision contained merely a recitation of the four standard issues enumerated in § 14-227b [g] without any further findings of fact and

---

[12] Inasmuch as the hearing officer acts on behalf of the commissioner, we hereinafter substitute "commissioner" for "hearing officer" where the facts ordinarily would call for reference to the latter.

[13] General Statutes § 4-183 (a) provides in relevant part: "Appeal to Superior Court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

conclusions of law and (3) concluded, independently, that she operated the vehicle." *Murphy* v. *Commissioner of Motor Vehicles*, supra, 54 Conn. App. 128–29.

The Appellate Court reversed the trial court's judgment, concluding that the absence of a "temporal nexus between the plaintiff's operation of [her] motor vehicle and her being under the influence of liquor or drugs"; id., 131; left the police officer without probable cause to arrest the plaintiff. Id., 132. Thus, the Appellate Court concluded that the evidence in the record was insufficient to support a finding that probable cause existed for Cicero to arrest the plaintiff for violating § 14-227a. See id., 130. Because the Appellate Court resolved the plaintiff's first claim in her favor, it did not address the plaintiff's remaining claims. Id., 132.

We granted the commissioner's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly conclude that the evidence in the administrative record was insufficient to establish probable cause that the plaintiff had violated . . . § 14-227a?" *Murphy* v. *Commissioner of Motor Vehicles*, 251 Conn. 904, 905, 738 A.2d 1091 (1999). We conclude that the Appellate Court improperly concluded that the evidence in the administrative record was insufficient to support a finding that probable cause existed for Cicero to arrest the plaintiff for violating § 14-227a. We also conclude that the evidence in the administrative record was sufficient to establish that the plaintiff had operated her vehicle.

The commissioner claims that the Appellate Court improperly concluded that there did not exist substantial evidence in the record to establish probable cause that the plaintiff had operated her motor vehicle while under the influence of liquor. In contrast, the plaintiff claims that the Appellate Court properly concluded that the evidence in the administrative record was insuffi-

cient to establish probable cause. We agree with the commissioner.

Our analysis begins with the appropriate standard of review. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted." (Internal quotation marks omitted.) *Bancroft* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 391, 399, 710 A.2d 807 (1998). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *Dolgner* v. *Alander*, 237 Conn. 272, 280, 676 A.2d 865 (1996).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . ." (Citations omitted; internal quotation marks omitted.) Id., 281.

"It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion [in

determining the issue of probable cause]. . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained." (Citation omitted.) *Demma* v. *Commissioner of Motor Vehicles*, 165 Conn. 15, 16–17, 327 A.2d 569 (1973).

We have stated that "[p]robable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 440, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999), quoting *State* v. *Diaz*, 226 Conn. 514, 541, 628 A.2d 567 (1993); see also *State* v. *Marra*, 222 Conn. 506, 513, 610 A.2d 1113 (1992). Thus, the commissioner need only have "a substantial basis of fact from which [it] can be inferred"; (internal quotation marks omitted) *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994); that the evidence in the administrative record supported a finding of probable cause with respect to the plaintiff's violation of § 14-227a.

In this case, the essence of the plaintiff's argument is that there was insufficient evidence in the record to establish that Cicero had probable cause to believe that the plaintiff *operated* her motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a. We begin by noting that the issue of whether one *operates* a motor vehicle within the meaning of § 14-227a is to be determined on a case-by-case basis, making "[p]roof of operation . . . a factual determination"; (internal quotation marks omitted) *Redden* v. *Kozlowski*, 45 Conn. App. 225, 227, 695 A.2d 26 (1997); rather than "a question of law . . . involv[ing] the application, interpretation and construction of [the stat-

ute]." *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 505, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). In addition, there is no requirement that the fact of operation be established by direct evidence.[14] On the contrary, our case law clearly establishes that sufficient evidence justifying the commissioner's determination of probable cause may be found where the "totality of the circumstances existing at the time of the plaintiff's arrest support[s] [such a finding] . . . ." *Kirei* v. *Hadley*, 47 Conn. App. 451, 457, 705 A.2d 205 (1998); see, e.g., *Schuh* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 547, 549, 551, 711 A.2d 743, cert. denied, 245 Conn. 924, 718 A.2d 21 (1998) (sufficient evidence of operation on public highway found when plaintiff discovered in driver's seat of stopped vehicle located on grassy slope five to six feet from main travel portion of highway); *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 503, 509 (rejecting plaintiff's challenge to sufficiency of evidence of operating motor vehicle when police officer found plaintiff in stationary vehicle after accident but did not witness operation of vehicle).[15]

---

[14] We note that, generally, "[t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . ." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 39, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998), quoting *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). "In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Internal quotation marks omitted.) *State* v. *Teti*, supra, 39.

[15] Similarly, in *State* v. *Englehart*, 158 Conn. 117, 256 A.2d 231 (1969), this court explained how a jury might view "operation" in light of particular facts. In *Englehart*, the defendant was discovered in her car, stopped in the middle of the road with the headlights on and the motor off, and slumped over the steering wheel. Id., 120. The police did not witness her drive the car to the location. See id. The court stated that, "[f]rom the evidence . . . [a] jury . . . [could infer] that the defendant, while under the influence of intoxicating liquor, had either driven the vehicle to the point at which it stopped or had attempted to start it after if had stopped . . . ." Id., 121. This inference, according to the court, was both reasonable and logical in light of the facts proven. See id. Thus, even a criminal conviction for driving under the influence of intoxicating liquor may be upheld based on reliable

For example, in *Kirei* v. *Hadley*, supra, 47 Conn. App. 451, the plaintiff claimed that the trial court improperly concluded that there was substantial evidence in the record to support a finding that he operated his vehicle within the meaning of § 14-227a when the police had discovered him walking a short distance from his vehicle, which was abandoned in a nearby snow bank. Id., 452–53. The plaintiff in *Kirei* testified at his suspension hearing that his consumption of intoxicating liquor occurred *after* he had operated his vehicle. Id., 456–57. Nevertheless, the hearing officer was not persuaded by the plaintiff's testimony. Id., 457. The Appellate Court concluded that "it was within the hearing officer's province to determine whether he *believed* the plaintiff's testimony regarding when the plaintiff consumed liquor in relation to the time of operating his motor vehicle." (Emphasis added.) Id., 457.

In *Kirei*, the Appellate Court concluded that "the testimony of the police officers, the police reports that were admitted into evidence and the totality of the circumstances existing at the time of the plaintiff's arrest support[ed] the hearing officer's finding that there was probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of liquor." Id., 457. We conclude that there is a similar "basis in fact"; (internal quotation marks omitted) id., 455; in this case in which lies the nexus between the plaintiff's consumption of intoxicating liquor and her operation of the vehicle.

In this case, the testimony of the plaintiff, the police reports upon which the commissioner relied and the totality of the circumstances existing when the plaintiff was arrested all support the commissioner's finding that there was probable cause to believe that the plaintiff

circumstantial evidence, notwithstanding the heightened burden of proof in criminal cases.

had violated § 14-227a. The plaintiff's car was found in the river, her breath smelled of alcohol and she lacked sufficient coordination to pass simple, field sobriety tests. The plaintiff, herself, testified that she was driving past the scenic area when she decided to pull over and take photographs. See footnote 6 of this opinion. She also testified that this occurred at "about 7 [or] 7:30 [p.m.]." Id. The police arrived at the scene shortly thereafter. The commissioner reasonably could have concluded, based on the plaintiff's testimony and other facts in the record, that the plaintiff was under the influence of intoxicating liquor before her vehicle rolled down the embankment and into the river, and that she had operated the vehicle while she was under the influence of intoxicating liquor.[16]

The absence of witnesses to the plaintiff's operation of the vehicle is not dispositive on the issue of operation. To be sure, it is often the case that police officers investigate § 14-227a violations after the intoxicated driver has ceased operating the vehicle. See, e.g., *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 33 Conn. App. 503. The circumstantial evidence in this case, including the observations of Cicero and other facts in the record, creates the "temporal nexus"; *Murphy* v. *Commissioner of Motor Vehicles*, supra, 54 Conn. App. 132; that, according to the Appellate Court, was lacking. It is incumbent upon this court to rely on the circumstantial evidence obtained by the police to determine that there was sufficient evidence in the record to support a finding of probable cause. Therefore, we conclude that it was not unreasonable for both the police officer and the commissioner to find that there

---

[16] "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and [the] court cannot disturb the conclusions reached by the commissioner if there is evidence that reasonably supports his decision." *Kirei* v. *Hadley*, supra, 47 Conn. App. 457, citing *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840 (1975).

was probable cause to believe that the plaintiff drove her vehicle to the location from which the vehicle had rolled into the river, and that the plaintiff had been under the influence of intoxicating liquor when she drove the vehicle to that location.

We conclude that: (1) the evidence in the administrative record was sufficient to support a finding of probable cause that the plaintiff had violated § 14-227a; and (2) the evidence in the administrative record was sufficient to support a finding that the plaintiff had operated her motor vehicle.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the plaintiff's claim that the trial court improperly held that the hearing officer's written decision was not defective in that the decision contained merely a recitation of the four standard issues enumerated in § 14-227b (g) without any further findings of fact and conclusions of law.

In this opinion the other justices concurred.