[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, Connecticut Natural Gas Corporation, appeals from a final decision of the defendant Connecticut Department of Public Utility Control ("the department") on the plaintiff's application for a rate increase. The other named defendants are the Connecticut Department of Public Utility Control Prosecutorial Division and the Office of Consumer Counsel. For the following reasons, the court finds no error in the department's decision and dismisses the appeal.
BACKGROUND
This appeal arises from the second phase of a rate case conducted by the department. In the first phase, the department set the plaintiff's revenue level. On November 9, 2000, the plaintiff commenced the second phase by filing an application for approval of new rate schedules. After several public hearings, the department issued a forty-eight page decision approving much of the plaintiff's application. (Return of Record ("ROR"), Item XI-1 ("Final Decision"), p. 1.[1])
The plaintiff challenges two aspects of the department's decision. The CT Page 4685 first concerns the allocation of the fixed costs of on-site production and storage plant. Prior to August 9, 2000, local distribution companies ("LDCs") in Connecticut had allocated gas costs among customers using a weighted average cost of gas pricing system ("WACOG"). The WACOG system charged each class of customers the overall average cost of gas, as opposed to the true costs of supplying gas to each particular class. (Court Exhibit 1 ("COSS decision"), p. 6.) On August 9, 2000, the department issued its cost of service study ("COSS") decision. In the COSS decision, the department concluded that 75% of the fixed costs should be allocated to "supply" or "sales" customers, who purchase their gas from the LDC and pay both for the sale and for transportation. According to the decision, the other 25% of the fixed costs should be allocated to "transportation" or "delivery" customers, who merely pay transportation costs to the LDC and purchase their gas from a third party supplier. (COSS decision, p. 12.)
In the present case, the plaintiff's rate proposal did not allocate the costs of on-site production and storage plant. (ROR, Final Decision, p. 12.) In the decision being challenged, the department determined that "a shift to COSS based class level commodity rates as defined in the COSS [decision] for all firm customers is appropriate and in-line [sic] with the Department's objective to move toward a more cost-based rate structure." (ROR, Final Decision, p. 14.)
The second aspect of the department's decision that the plaintiff challenges concerns telemetering devices, which allow a company to obtain accurate daily gas consumption measurements. (ROR, Final Decision, p. 25.) Prior to the present proceedings, the plaintiff employed telemetering devices to monitor transportation customers with annual usage levels above 5,000 ccf (100 cubic yards) and for most commercial or industrial sales customers with annual usage levels above 30, 000 ccf. For smaller customers, the plaintiff used algorithms to estimate consumption. (ROR, Final Decision, pp. 7, 25-26.) As part of its rate application, the company proposed to increase the threshold for transportation customers to 20,000 ccf. Under its plan, if a transportation customer using more than 20,000 ccf annually did not install the necessary telemetering equipment, the plaintiff would place that customer in the next most economical rate class available to it that did not require telemetering. (ROR, Final Decision, pp. 26, 27.)
The department ordered the company to set the minimum threshold for telemetering at 5,000 ccf for both sales and transportation customers. To implement this ruling and facilitate the transmission of customer gas information, the department ordered the plaintiff to send written notice directing that, within three months, all customers meeting the threshold must install phone lines mining from the telemetering equipment to the CT Page 4686 plaintiff The notice was to provide that, if a customer failed to install phone lines within a three month period, the plaintiff would install them on its own and bill the customer the plaintiff's installation cost. The department further ordered that the plaintiff complete installation of telemetering equipment and bill all applicable customers an $8.28 telemetering charge even if the phone line is not installed in time. (ROR, Final Decision, pp. 27-28.)
This appeal followed.
DISCUSSION
 I
The court first sets forth the standard of review governing administrative appeals. Under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq., judicial review of an agency decision is very restricted. See MacDermid Inc. v. Department ofEnvironmental Protection, 257 Conn. 128, 136-37, 778 A.2d 7 (2001). Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Schallenkamp v.DelPonte, 229 Conn. 31, 40, 639 A.2d 1018 (1994). "It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of its discretion. . . ." (Internal quotation marks omitted.) Murphy v. Commissioner of MotorCT Page 4687Vehicles, 254 Conn. 333, 343, 757 A.2d 561 (2000).
 II
General Statutes § 16-19e (a) gives the department the authority to "examine and regulate . . . the level and structure of rates" of gas and electric companies. Pursuant to § 16-19e (b), the department:
 shall require the utilization of such new principles and structures to the extent that the department determines that their implementation is in the public interest and necessary or desirable to accomplish the purposes of this provision without being unfair or discriminatory or unduly burdensome or disruptive to any group or class of customers, and determines that such principles and structures are capable of yielding required revenues.
The plaintiff's criticism of the department's plan for allocating production and storage costs starts with the claim that, in conflict with the statute, it is unduly burdensome and disruptive to the plaintiff's customers. The plaintiff fears that allocating most of the cost of investment to sales service in conformance with the COSS formula will adversely affect sales customers. These customers, according to the plaintiff, are particularly sensitive to price fluctuations and are therefore more likely to switch to third party suppliers who are not yet subject to true cost allocation methodology. A related concern of the plaintiff is that the COSS guidelines will conflict with the department's stated goal of revenue neutrality, whereby utilities are indifferent between offering sales and transportation services. The plaintiff adds that the record is devoid of any basis for the department's conclusion that there should be a 75% — 25% cost allocation between sales and delivery services. The plaintiff's ultimate concern is that the loss of sales customers will make it unable to recover the costs on its investment, in conflict with the statutory directive to set rates so that they "are capable of yielding required revenues." General Statutes §16-19e (b). The plaintiff claims that its proposal offered a more gradual conversion to a true cost rate structure.
The department acknowledged the plaintiff's concerns but emphasized countervailing interests. The hearing officers stated that "the COSS assignment of supply related plant in the instant Decision outweighs any concerns of revenue neutrality or stranded [unrecoverable] costs." (ROR, Final Decision, p. 13.) Noting that "[n]either the Department nor the Company can accurately predict the collective behavior of more than 10,000 customers acting independently in their own self interest," the CT Page 4688 decision observed that there is no certainty that customers will migrate away from the plaintiff's sales service. (ROR, Final Decision, p. 13.) According to the decision, some customers may switch from transportation to sales, thus enhancing revenues. As for the plaintiff's fears of being undercut by competition, the hearing officers found that third party suppliers stand ready to exploit non-cost based pricing schemes like that proposed by the plaintiff (ROR, Final Decision, p. 13.) Further, "the Company is not capable of improving upon the competitive fairness that is established when commodity rates are unique for each tariff and are set equal to true cost." (ROR, Final Decision, p. 13.) The department thus sought to "[utilize] . . . new principles and structures" in conformance with the various goals of the statute, including assuring that "their implementation is in the public interest." General Statutes § 16-19e
(b).
The department's rationale on its COSS cost allocation formula is essentially that "on-site gas plant provides both supply, for the sole benefit of sales customers, and overall system reliability, which benefits both sales and transportation customers." (ROR, Final Decision, p. 12.) This reasoning firmly supports allocating the greater percentage of production and storage costs to sales customers. The plaintiff's additional criticism, that the specific 75% — 25% figures are without support, does not withstand scrutiny. The department arrived at these figures in the COSS decision after conducting numerous technical meetings and hearings. (COSS decision, pp. 5-6.) While the court does not agree with the department's argument that the plaintiff can no longer challenge these figures because it did not appeal the COSS decision, the fact remains that, because the plaintiff did not appeal, the COSS decision is now a final decision of the department. The COSS decision thus represents a prior interpretation of the statute by the agency empowered to enforce it and thus one to which the court should give some deference. SeeMacDermid, Inc. v. Department of Environmental Protection, supra,257 Conn. 137.
The present decision provides that the 75% — 25% formula as well as the clash between that formula and the goal of revenue neutrality will be addressed in an upcoming investigation. In addition, the department directed the plaintiff to provide quarterly reports on any migration of customers to and from third party suppliers. (ROR, Final Decision, p. 13.) These facts, coupled with the fact that the department carefully weighed the plaintiff's existing rate proposal arguments against competing concerns, reveals that the department was not arbitrary or capricious, but rather approached this case in a fair, open-minded way. The plaintiff has not supplied proof that the department's rate proposal is unduly burdensome or disruptive, in violation of the statute, or that the rate formula compromises the statutory goal of yielding required CT Page 4689 revenues. See Murphy v. Commissioner of Motor Vehicles, supra,254 Conn. 343. While the plaintiff disagrees with the rationale of the department, it has not established, as it must to prevail, that the department's conclusions were unreasonable. Schallenkamp v. DelPonte,
supra, 229 Conn. 40. The plaintiff essentially asks this court to substitute its judgment for that of the department in an area in which the department has considerable discretion and expertise. This the court cannot do. See Connecticut Natural Gas Corp. v. Public Utilities ControlAuthority, 183 Conn. 128, 137, 439 A.2d 282 (1981); General Statutes § 4-183 (j).
 III
The plaintiff challenges two aspects of the department's telemetering orders. The first is the department's decision to set the telemetering threshold at 5,000 ccf for both sales and transportation customers. The plaintiff's criticisms of the 5,000 ccf threshold are somewhat contradictory in view of the fact that, at least for transportation customers, the plaintiff has maintained its own 5,000 ccf standard. In any event, at least part of the department's rationale for setting a relatively low threshold seems irrefutable. As stated in the decision, "[t]elemeters are more accurate than algorithms (used by non-telemetered customers) and are a better measure of gas consumption, especially for larger use customers." (ROR, Final Decision, p. 26.) Accordingly:
 Acting in their own financial best interest, sales and transportation customers may reduce peak day demand in response to an understanding of their peak day consumption habits, thereby reducing their overall bills. Consequently, reducing peak day demand can be an excellent method to meet the state's gas conservation goals, and at the same time have a tremendous impact on the Company's overall cost to serve. Reducing the peak day demand may decrease the Company's need to purchase additional capacity and/or other peaking resources.
(ROR, Final Decision, p. 27.)
The department's decision thus seeks to further the public interest, in conformance with General Statutes § 16-19e (b). The decision also accommodates the plaintiff's private interest insofar as it approved the plaintiff's request for a $8.28 monthly telemetering charge. (ROR, Final Decision, p. 26.) While the plaintiff disagrees with other aspects of the department's reasoning concerning the plaintiff's revenue needs, the court simply cannot say that the department's choice to set the CT Page 4690 telemetering threshold for all customers at 5,000 ccf, as opposed to 20,000 for transportation customers and 30,000 ccf for sales customers, violates the statute or is arbitrary, capricious, or unreasonable. This sort of fact-laden and technical decision falls within the discretion and expertise of the agency charged with responsibility by the legislature, and it is not the role of this court to second guess its decision. SeeMacDermid v. Department of Environmental Protection, supra,257 Conn. 136-37.
The second aspect of the telemetering decision challenged by the plaintiff concerns installation and enforcement. The plaintiff labels the department's orders "a series of unenforceable, draconian measures. . . ." (Plaintiff's Brief, p. 20.) The department's position is that charging a customer who fails to install a telemetering phone line the monthly telemetering charge as well as the company's cost of installation "would provide an economic incentive for the customer to install a functional phone line or have one available." (ROW Final Decision, p. 28.) The department's position reflects the basic economic truth that people will normally do what costs them less. This court cannot question this approach.
The plaintiff contends that the department lacks authority to order the plaintiff to install phone lines when the customer fails to cooperate and that this order places the plaintiff and its employees at risk for arrest, civil damages, or injury as a result of trespassing. In general, the department has the statutory authority to "order such reasonable improvements, repairs or alterations in such plant or equipment, or such changes in the manner of operation, as may be reasonably necessary in the public interest." General Statutes § 16-11. By regulation, "[a]ll gas sold by a gas company and all gas consumed by the gas company shall be metered, except in case of emergency, or when otherwise authorized by the [public utilities] commission." Regs., Conn. State Agencies § 16-11-21. The plaintiff has not proven how the installation of phone lines from telemeters would constitute a trespass against the commercial property of an uncooperative customer when the installation of gas meters, presumably at the property of both commercial and residential customers, is fully authorized by law[2] Nor has the plaintiff proven any greater likelihood of injury to utilities workers than in any other situation involving entry onto commercial property to do repairs or maintenance. The plaintiff has thus not met its burden of "proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion. . . ." (Internal quotation marks omitted). Murphy v.Commissioner of Motor Vehicles, supra, 254 Conn. 343.
CONCLUSION
CT Page 4691
The plaintiff having failed to sustain the grounds for its appeal, the appeal is dismissed.
_________________________ Carl J. Schuman Judge, Superior Court