[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, Alcoa Composites, Inc. ("ACI"), appeals from the final decision of the defendants Department of Environmental Protection ("the department") and Commissioner of Environmental Protection ("the commissioner") finding the plaintiff jointly and severally liable with one other party for pollution at an industrial site in Cromwell and ordering the plaintiff to investigate and remediate that pollution. For the following reasons, the court dismisses the appeal.
BACKGROUND
The administrative record discloses the following facts. From at least 1977 through the department's decision in August, 2001, various aluminum and composite manufacturing companies have operated at 14 Alcap Ridge Road in Cromwell. The site is approximately 6.4 acres located in a light industrial, commercial, and residential area. (Return of Record ("ROR"), Final Decision, p. 3 ¶ 1; pp. 7-8 ¶¶ 12-16.) In 1980, Robert Miller purchased the property and has maintained ownership of it to the current time. Between July, 1990 and December, 1993, the plaintiff leased the real estate from Miller and manufactured composite honeycomb products at the site. (ROR, Final Decision, p. 7 ¶¶ 13-14.)
On June 23, 1998, the commissioner issued orders to Miller, the plaintiff, and two other companies that had conducted manufacturing operations to investigate and remediate pollution at the site. In November, 1999, the commissioner issued similar abatement orders to three additional companies that had manufactured at the site. All the orders alleged that the respondents had established a facility or created a condition which reasonably could be expected to create a source of pollution to the waters of the state. (ROR, Final Decision, pp. 1-2 n. 1; p. 30.) CT Page 5090
Two of the respondents did not appeal the orders, two respondents defaulted, and another respondent, Safeway Products, Inc. ("Safeway"), entered into a consent order with the department. The remaining respondents, Miller and the plaintiff, requested and received a hearing. After four days of hearings in March and April, 2001, the hearing officer issued a final decision affirming the commissioner's orders. (ROR, Final Decision, pp. 2-3 n. 1; p. 34.)
The hearing officer found that, although the plaintiff was concerned about and identified environmental problems during its tenancy, the plaintiff continued operations that resulted in the discharge of hazardous materials into the soil and then into the groundwater. The hearing officer concluded that the plaintiff was liable for creating a condition that reasonably could be expected to create a source of water pollution pursuant to General Statutes § 22a-432.[1] In affirming the order that the plaintiff investigate and remediate the pollution at the site, the hearing officer found that the plaintiff failed to produce sufficient evidence to establish a basis to apportion liability. Accordingly, the hearing officer concluded that the plaintiff and Miller were jointly and severally liable for the pollution that exists both on- and off-site. (ROR, Final Decision, pp. 2, 29.)
The plaintiff appeals.
DISCUSSION
 I
Under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq., judicial review of an agency decision is very restricted. See MacDermid, Inc. v. Department of EnvironmentalProtection, 257 Conn. 128, 136-37, 778 A.2d 7 (2001). Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary CT Page 5091 or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Schallenkamp v.DelPonte, 229 Conn. 31, 40, 639 A.2d 1018 (1994). "It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion. . . ." (Internal quotation marks omitted.) Murphy v. Commissioner of MotorVehicles, 254 Conn. 333, 343, 757 A.2d 561 (2000).
 II
In reviewing a department order to investigate and abate pollution at a site, it is necessary to determine "whether the agency ever addressed the issue of combined or alternative causes for the environmental harm caused and made the requisite findings necessary for imposing upon the [plaintiff] responsibility for cleaning up the waste deposited by other [polluters]." Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580,609, 590 A.2d 447 (1991). In this case, the department considered the issue of combined causes for pollution and issued clean up orders to all seven potentially responsible parties. The department resolved the issue of liability with all parties except Miller and the plaintiff prior to the administrative hearings in this case. (ROR, Final Decision, pp. 2-3 n. 1; p. 29.)
The plaintiff first challenges the hearing officer's decision declining to apportion liability and instead finding the plaintiff jointly and severally liable for remediation with Miller. In Connecticut BuildingWrecking Co. v. Carothers, supra, 218 Conn. 609, our Supreme Court applied common law principles and held that "[o]nly in the event that there is no reasonable basis for apportionment of the damages caused to the environment among those whose illegal activities have contributed to such harm would joint and several liability be appropriate." The court also observed that, under the common law, the burden of proving a basis for apportionment is upon the actor seeking it. Id., 608.[2]
On March 21, 2001, just five days before the scheduled hearing in this case, the plaintiff filed a request to postpone the hearing pending the completion of a site investigation by Safeway, which the plaintiff claimed would begin in the spring of that year. (ROR, Item D-164, pp. 1-4.) The hearing officer denied the request. (ROR, Item D-167A, p. 1 ¶ 1.) As a result of the hearing, the hearing officer made the CT Page 5092 following findings regarding apportionment:
 [A]lthough each party operated independently, ACI did not show that the impacts and cumulative effects of the pollution could be divided or characterized as such to demonstrate that ACI should be liable for a certain percentage.
 The extent of the pollution on the site has not been fully characterized. There are numerous potential source areas of pollution existing on site that have not been investigated. To apportion liability absent such critical information would be speculative at best. The record is devoid of the toxicity or migratory potential of ACI's wastes, the quantity of chemicals used by ACI, and the resulting proportionate pollution to the soils and groundwater from ACI's releases, discharges and spills.
(ROR, Final Decision, p. 31.) Accordingly, the hearing officer concluded that the plaintiff failed to produce sufficient evidence to establish a reasonable basis to apportion liability. (ROR, Final Decision, p. 32.)
These findings reveal the insufficiency of the plaintiffs claim. The plaintiff received the commissioner's order to abate pollution at the site in June, 1998. The plaintiff waited almost three years, until March, 2001, and then requested an open-ended postponement of the hearing only five days before its scheduled commencement on the ground that the hearing officer should await the results of an investigation that had not yet begun. There was no reason why the plaintiff could not have conducted an investigation on its own during this long interim period. If the plaintiff had been unable to gain permission to enter the site from the owner, the plaintiff could have requested assistance from the commissioner.[3] Under these circumstances, the hearing officer did not abuse her discretion in denying the request for a postponement or in relying on the absence of a complete investigation in concluding that the plaintiff had not met its burden of proving a basis for apportionment. See generally DiStefano v. DiStefano, 67 Conn. App. 628, 631, 787 A.2d 675
(2002).
The plaintiff could also have presented evidence from its own records of "the toxicity or migratory potential of ACI's wastes [and] the quantity of chemicals used by ACI." (ROR, Final Decision, p. 31.) The plaintiff could then have compared this information with similar information from the other companies to show that the "cumulative effects of the pollution could be divided or characterized as such to demonstrate that ACI should be liable for a certain percentage" and also to show "the resulting proportionate pollution to the soils and groundwater from ACI's CT Page 5093 releases, discharges and spills." (ROR, Final Decision, p. 31.) Although the information from the other companies might not have been readily available, the plaintiff could have at least attempted to obtain it through the discovery procedures established in the department's regulations. See Regs., Conn. State Agencies § 22a-3a-6 (n). Given the failure of the plaintiff to present information about the nature and quantity of chemicals and wastes present at the site, coupled with the plaintiffs failure to investigate and present information about the current condition of the site, the hearing officer's conclusion that the plaintiff had failed to meet its burden of proving a basis for apportionment was reasonable. Accordingly, the plaintiff cannot prevail on this claim.
 II
General Statutes § 22a-133k provides that the commissioner "shall adopt regulations . . . setting forth standards for the remediation of environmental pollution at hazardous waste disposal sites and other properties which have been subject to a spill . . . which regulations shall fully protect health, public welfare and the environment." Pursuant to this authority, the commissioner enacted what are known as the remediation standard regulations set out in §§ 22a-133k-1 through22a-133k-3 of the Regulations of Connecticut State Agencies. As the name implies, these regulations set standards or concentration levels for the remediation of polluted soil. Regs., Conn. State Agencies § 22a-133k-2, and polluted groundwater. Regs., Conn. State Agencies §22a-133k-3.[4]
In 1992, the plaintiff hired an environmental consulting firm to determine the nature and extent of the contamination at the site. The firm recommended that the plaintiff not remediate TCA and chromium groundwater contamination because the levels were below those governed by the regulations. (ROR, Final Decision, p. 17 ¶ 41; p. 19 ¶ 48; p. 32.)[5] The plaintiff argues that, if the regulations do not require remediation of any minimal pollution for which it is responsible, then it is not subject to a clean up order under General Statutes § 22a-432.
This argument may be academic. The commissioner has ordered that the plaintiff conduct a new investigation of the site. Surely, the commissioner is not currently bound by the investigation of a consulting firm hired by the plaintiff in 1992, especially given that the hearing officer found that the investigation was inadequate and contained data gaps. (ROR, Final Decision, p. 2; pp. 21-24 ¶¶ 54-61; p. 33.) See General Statutes § 22a-6 (a) (5). Given that the new investigation may show that the plaintiff is in fact responsible for pollution that exceeds the levels in the regulations, the perceived conflict between the CT Page 5094 regulations and the commissioner's abatement order may never arise.
In any case, the court does not find a conflict in this case. First, there is no conflict between the regulations and that part of the commissioner's order under § 22a-432 that requires the plaintiff to conduct an investigation. Indeed, the investigation is necessary to determine the very pollution level in question. More importantly, with regard to the abatement portion of the order, the fact that the plaintiff is jointly and severally liable for the clean up means that the plaintiff did not prove a basis for apportioning his own responsibility. Thus, the plaintiff may bear "responsibility for cleaning up the waste deposited by other [polluters]," Connecticut Building Wrecking Co. v. Carothers, supra, 218 Conn. 609, notwithstanding its contention that its own pollution did not rise to the levels governed by the regulations.
This result finds support in the legislative scheme. The abatement statute, General Statutes § 22a-432, which is part of Chapter 446k of the General Statutes, applies to any facility or condition which can reasonably be expected to create a source of "pollution" to the waters of the state. See supra note 1. As used in Chapter 446k, "pollution" means:
 harmful thermal effect or the contamination or rendering unclean or impure or prejudicial to public health of any waters of the state by reason of any wastes or other material discharged or deposited therein by any public or private sewer or otherwise so as directly or indirectly to come in contact with any waters. . . .
General Statutes § 22a-423. Thus, the "pollution" that can give rise to an abatement order can consist of "any wastes or material" and is not limited to pollution reaching the remediation levels in the regulations.
The regulatory scheme interlocks with these statutes. The regulations provide that "pollution" means "pollution as defined in section 22a-423 of the General Statutes." Regs., Conn. State Agencies § 22a-133k-1 (a) (46). The regulations also provide that they apply to "any action taken to remediate polluted soil, surface water or a ground-water plume at or emanating from a release area which action is: (1) required pursuant to Chapter. . . 446k of the General Statutes. . . ." Regs., Conn. State Agencies § 22a-133k-1 (b) (1). Thus, the regulations contemplate that the commissioner may initiate abatement actions based on "pollution" as defined in the statute, which pollution might not reach remediation levels under the regulations. Such an interpretation appropriately harmonizes the law and promotes the remedial nature of our environmental statutes. See Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375,388, 698 A.2d 859 (1997); Starr v. Commissioner of EnvironmentalCT Page 5095Protection, 226 Conn. 358, 382, 627 A.2d 1296 (1993). Accordingly, the hearing officer correctly interpreted § 22a-432 to apply to the plaintiff in this case.
CONCLUSION
The plaintiff having failed to sustain the grounds for its appeal, the appeal is dismissed.
_______________________ Carl J. Schuman Judge, Superior Court