******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PAWEL SIENKIEWICZ
(AC 36536)

Beach, Alvord and Pellegrino, Js.

*Argued October 7, 2015—officially released January 12, 2016*

(Appeal from Superior Court, judicial district of New Britain, geographical area number fifteen, Baldini, J. [judgment]; Strackbein, J. [guilty plea].)

*Jodi Zills Gagne*, assigned counsel, with whom, on the brief, was *Charles F. Willson*, assigned counsel, for the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Elizabeth M. Moseley*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Pawel Sienkiewicz, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs, in violation of General Statutes § 14-227a (a). On appeal, the defendant claims that the evidence presented at trial was not sufficient to support a finding of guilty beyond a reasonable doubt as to the requisite element that he was operating a motor vehicle. We do not agree, and we affirm the judgment.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the evening of April 3, 2011, Officer Bruce Moro was on patrol in New Britain and observed a Camaro automobile stopped partially on a sidewalk, at a diagonal angle. Upon getting out of his vehicle, Moro heard the Camaro's engine "cranking over . . . but it wasn't starting." Moro approached the Camaro and observed the defendant seated on the driver's side, behind the steering wheel. The defendant had "glossy eyes . . . [and] a little bit of [a] confused look on his face." Moro leaned in as he asked for the defendant's license, registration, and insurance and noticed that the defendant's speech was "a little slurred." Moro asked the defendant to exit the Camaro. The defendant opened the door and almost fell as he tried to exit. Moro grabbed the defendant and steadied him; as he did so, he smelled the "distinct odor of alcohol." Moro testified that he then walked to the front of the Camaro and touched the hood of the vehicle. The hood was warm. A second officer who had arrived at the scene administered a horizontal gaze nystagmus test, which indicated to the officers that the defendant was under the influence of alcohol. The officers arrested the defendant, and a tow truck was called for the Camaro.[1]

The jury found the defendant guilty of operating a motor vehicle while under the influence of alcohol, and the court, *Baldini*, *J.*, sentenced the defendant to a term of imprisonment for three years, suspended after twenty-two months, and a three year period of probation. This appeal followed.

Our standard of review is well settled. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Lee*, 138 Conn. App. 420, 433, 52 A.3d 736 (2012); see *State* v. *Jones*, 173 Conn. 91, 94, 376 A.2d 1077 (1977).

To prove that the defendant was guilty, the state had to show beyond a reasonable doubt that the defendant

"operate[d] a motor vehicle while under the influence of intoxicating liquor or any drug or both." General Statutes § 14-227a (a). "It is well settled that 'operating' encompasses a broader range of conduct than does 'driving.' " *State* v. *Lee*, supra, 138 Conn. App. 434. "[T]here is no requirement that the fact of operation be established by direct evidence." *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 345, 757 A.2d 561 (2000). In fact, our Supreme Court has observed that "[t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . . In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Citations omitted; internal quotation marks omitted.) Id., 345 n.14. The defendant claims that there was insufficient evidence to support the operation element because there was no evidence that the defendant had driven the car onto the sidewalk or that the car was in an operable condition when Moro arrived at the scene. After reviewing the record and construing the evidence in the light most favorable to sustaining the verdict, we do not agree.

The record supports the conclusion that the state proved the element of operation of the motor vehicle. When Moro came upon the Camaro, it was parked partially on the sidewalk. The defendant was in the driver's seat, attempting to start the vehicle. Moro did not observe anyone else in the vicinity. Finally, the hood was warm to the touch, which indicated to Moro that the vehicle recently had been running. From these facts, the jury reasonably could infer that the defendant drove the Camaro onto the sidewalk before Moro arrived. In that event, it would not matter whether, as the defendant claims, the vehicle was incapable of movement at the time of his arrest.

Our conclusion is consistent with previous cases in which the cumulative force of circumstantial evidence was sufficient to satisfy the element of operation. See *State* v. *Teti*, 50 Conn. App. 34, 40, 716 A.2d 931 (rejecting defendant's claim that state failed to prove that defendant operated vehicle for purposes of § 14-227a when defendant was witnessed standing near vehicle that had crashed into snowbank, only footprints near vehicle were those of defendant and officer, and, aside from defendant, no one else was seen in area), cert. denied, 247 Conn. 921, 722 A.2d 812 (1998); *State* v. *Ducatt*, 22 Conn. App. 88, 93, 575 A.2d 708 (holding that defendant, who had been found unconscious in driver's seat in idling vehicle in parking lot, operated motor vehicle despite not having moved vehicle because, "while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulate[d], for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affect[ed] or could affect the vehicle's movement"), cert. denied, 217 Conn.

804, 584 A.2d 472 (1990). Thus, there was sufficient evidence to support the operation element in the present case because the jury reasonably could have inferred that the defendant had driven the vehicle onto the sidewalk.

The judgment is affirmed.

[1] Moro testified that the tow truck was called because the Camaro was not registered or insured. A second officer testified: "I guess the vehicle wouldn't start, so the vehicle I suppose got towed."